CENTRAL WISCONSIN SUPPLY COMPANY, Appellant, v. JOHNSTON BROTHERS CLAY WORKS et al., Appellees.

**SALES:** Actions—Burden in re Specifically Described Goods. A plaintiff suing to recover the price of *particularly described goods* which he alleges defendant ordered, but refused to receive or pay for, and met by a general denial, does not make a jury question until he establishes substantial performance or tender of performance. So held where the goods were described as ''2-inch Harrisburg, Ill., lump coal,'' and where the proof as to the coal tendered was wholly indefinite as to character, kind, or quality.

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

DECEMBER 15, 1922.

ACTION at law, to recover the contract price of five carloads of coal, alleged to have been sold by plaintiff to defendant. There was a jury trial. Judgment for defendants upon a directed verdict, and plaintiff appeals.—*Affirmed.*

*Helsell & Helsell,* for appellant.

*Price & Burnquist,* for appellees.

WEAVER, J.—Plaintiff is a wholesale dealer in coal at Beaver Dam, Wisconsin, and the defendant Johnston Brothers Clay Works is a concern engaged in the manufacture of clay products at Kalo, Iowa, near the city of Fort Dodge. The claim on which suit is brought is, in substance, that, on October 18, 1919, defendant gave plaintiff a written order for five carloads of coal, to be shipped to defendant's place of business, which

order was duly accepted; that thereafter, in January, 1920, said order was filled, and the coal so called for was forwarded to the defendants; but that, on the arrival of said shipments at their destination, the defendants refused and still refuse to accept or receive or pay for the same, or for freights which the plaintiff was compelled to prepay thereon. Because of this alleged failure to perform their contract of purchase, plaintiff demands recovery in the sum of $1,434, with interest and costs. Answering the petition, defendants admit sending plaintiff the telegram hereinafter set out, and aver that the same was sent in response to quotations received from the plaintiff, but deny that plaintiff ever shipped them any coal in response to said order, or that they ever received such coal. All other allegations of the petition are denied. The testimony on the trial tended to show that, on October 16, 1919, defendants received from plaintiff a so-called trade letter or bulletin, suggesting the wisdom of making early provision for a fuel supply, and saying:

"To help you secure quick deliveries, we have placed in transit the following tonnage, and can divert on your wire order."

Following this is a list of numerous kinds and varieties of coal, with the further statement:

"For direct shipment from the mines, we can offer you the following:" naming a list which includes, among other varieties, "Harrisburg, Saline County, Ill., 2" lump $3.25; Mine Run $2.35; 2" Screenings $1.75."

The letter closes with the words:

"All the coal offered is fully guaranteed as to quality and preparation. If interested, act quick and wire order."

On receipt of this communication, defendants, under date of October 18, 1919, telegraphed plaintiff as follows:

"Ft. Dodge, Iowa, Oct. 18, 1919.
"Central Wisconsin Supply Co.,
    "Beaver Dam, Wisconsin.
"Ship us five cars Harrisburg, Illinois, two-inch lump coal, three twenty-five per ton, mines. Letter follows.
                    "Johnston Bros. Clay Works."

This order was acknowledged by plaintiff, as follows:

"October 18th, 1919.

"Johnston Bros. Clay Works,
        "Ft. Dodge, Iowa.
"Gentlemen:

"We have your wire which reads: 'Ship us Five cars Harrisburg, Ill. two-inch lump coal three twenty five per ton mines letter follows.' We are accordingly entering your order at the mines with the instructions to ship cars as soon as possible. Enclosed you will find our formal acknowledgment No. A-1771 covering the five cars of 2″ lump, to be shipped to you at Fort Dodge, Iowa. Thanking you kindly for this business, we are,
                        "Yours very truly,
                                "Central Wisconsin Supply Co.
"Sales Dept. 2—RVK'BM."

"No. A-1771.
"Central Wisconsin Supply Co. Beaver Dam, Wisconsin. Telephone 4371. Date 10-18-19. Salesman Wire. Sold to Johnston Bros. Clay Works. Consigned to them. Destination Kalo, Iowa. Route cheapest. Terms Net Cash Regular. 5 cars Harrisburg 2″ Lump 3.25 T Mine. Subject to any advance in mining rate. Copy. Important. This acknowledges your order. If not correct, write us by return mail, referring to order number. This Order is Accepted Under the Following Conditions: Subject to usual mining and transportation contingencies and all other causes beyond our control. This sale is based on government prices now in effect. Mine track scale weights at shipping point shall govern all settlements, and no deductions therefrom, based on railroad or destination weights will be recognized. No switching or demurrage charges at destination will be absorbed except by prior agreement. No verbal or other modifications of these terms will bind us. Quotations, orders, or contracts not binding until accepted by this company in writing."

Excepting a correction made in the order immediately after its transmission, changing the destination of the shipments from Fort Dodge to Kalo, nothing appears to have been done in performance of the alleged contract until dates from January 10 to January 20, 1920, when plaintiff, or a coal mining company at or near Harrisburg, Illinois, acting for the plaintiff,

delivered five cars of coal to the railway carrier, consigned to the defendants at Kalo, Iowa. The bills of lading describe the shipments as being of "lump coal," but do not otherwise indicate its origin, character, kind, or quality. These shipments having been made, plaintiff, on or about January 21, 1920, sent defendants a statement of account, charging the defendants with five cars of coal at $3.60 per ton, and added prepaid freight charges. This statement was received by defendants January 23, 1920, before any of the coal shipments had reached their destination. Defendants at once wrote the plaintiff as follows:

"Clay Works, Iowa, January 23rd, 1920.
"Central Wisconsin Supply Co.,
   "Beaver Dam, Wisconsin.
"Gentlemen:

"We have just received your invoices for coal which we ordered last October. We notice you are charging us $3.60 per ton. Now we wish to state that we are able to buy all of this grade of coal we want at $2.55 per ton F. O. B. mines. You therefore should not have shipped us any coal on our old order without taking it up with us first, especially if you are expecting to collect as large a price as you are invoicing at. Now, we would be willing to pay you for what coal has been shipped on the basis of $2.55 per ton F. O. B. mines, but we of course could not pay any more than that. Therefore, do not ship any more, and as none of this coal has come in, you may have the privilege of diverting the coal in transit, because we surely would not accept it at more than the market price. We would have been willing to pay the $3.25 per ton in October if we could have got the coal, but of course we are not willing to pay that price now, as the market is different than it was at that time. Trusting you will give this immediate attention, as we would not accept any of the coal you shipped us until we hear from you, remaining,

"Yours truly,
         "Johnston Bros. Clay Works,
            "Per D. G. Johnston, Manager."

Following this, and we presume after the shipments had reached their destination, there appears to have been some tele-

graphic correspondence not fully set out in the printed record; but it is, perhaps, sufficiently indicated by a letter from plaintiff to defendant, under date of February 6, 1920, as follows:

"Feb. 6, 1920.

"Johnston Bros. Clay Works,

"Fort Dodge, Iowa.

"Gentlemen:

"We have just received your wire which reads: 'We will not accept your coal; you have no order from us for it. There is no use to wire further. Consider this message final.' In reference to not having an order from you for this coal, kindly refer to your wire of October 18th, which reads: 'Ship us five cars Harrisburg, Illinois, 2" lump coal $3.25 per ton mines. Letter follows.' We immediately acknowledged your order on October 18th, our acknowledgment A-1771, bearing the notation, 'Subject to any advance in mining rate.' On October the 20th we received your letter of October 18th confirming your wire message. If this is not an order, will you kindly explain to the writer what it is? As you objected to paying the increase of 35 cents per ton, we wired you on February 4th that we were mailing credit memorandum, allowing you the 35 cents per ton. You had better reconsider this matter and save yourself trouble and demurrage. This will be our final request, and we would suggest you advise us immediately what you propose to do.

"Yours very truly,

"Central Wisconsin Supply Company, Coal Department.

"P. S. This letter sent registered, and have requested a receipt card."

Aside from the evidence afforded by the correspondence already set out, and by the bills of lading issued by the carrier, the only testimony for plaintiff was given by Mr. Gladney, plaintiff's treasurer at Beaver Dam, Wisconsin, and Mr. Keough, freight agent of the carrier at the destination of the cars. Mr. Gladney did not profess to have any knowledge of the fact of the shipments made to defendants from Harrisburg, except such as he derived from the mining company at the latter place and from the bills of lading, freight bills, and receipts. He did not see the coal at any time before or after shipment, had

no personal knowledge of its character, kind, quality, or weight, and did not know whether cars contained Harrisburg 2" lump or mine run, except such knowledge as he derived through correspondence and bills of lading. He explained the delay in making the shipments as having been caused by "labor troubles" and strikes at the mine, and said that the coal was invoiced to defendants at a greater price than was specified in the order because, by reason of the strike, the price of coal had been advanced at the mines. The witness Keough was not the carrier's freight agent at Fort Dodge and Kalo, when the coal was received there, he having succeeded one Spoor in that position at a later date; and in his testimony, he speaks only of such knowledge as he derived from the records of the freight office. Said records tend to show the receipt at the station of five cars of coal, consigned to the defendants and refused by them. To this record, relating to these cars, is added the memorandum: "Sold P. G. Co. [said to mean Plymouth Gypsum Company] 2-26-20." Of one other car, the entry is, "Sold Culv. and I. Mills;" and of another, "Sold J. A. Forbes." By whom sold, or on what account, or for what amount, or what disposition was made of the proceeds, the record is entirely silent.

Plaintiff also called to the stand one of the defendants, who admitted sending the telegraphic order of October 18, 1919, and that defendants did not notify plaintiff of their refusal to receive the coal until after receiving plaintiff's invoice in January, 1920.

The defendants offered no evidence, but moved for a directed verdict in their favor, on the ground, briefly stated, that the evidence offered is insufficient to show performance by the plaintiff of the alleged contract sued upon. This motion was sustained. The assignment of error upon this ruling is the vital question to be determined on this appeal.

I. We have indulged in a more extended statement of the record than is usual, because we think it will obviate the necessity for any protracted discussion upon the law applicable thereto. The plaintiff sues to recover the price of coal which defendants are alleged to have ordered, but refused to receive or pay for. That the order was made, and that defendants did

refuse to receive or pay for the coal sent, is admitted; but to entitle plaintiff to recover, it has the burden of showing a full, complete, and substantial performance of the contract on its part. The mere existence of a contract gives no right of action. Such rights exist only when the plaintiff has performed or duly tendered performance on his part. In the case at bar, if performance or tender of performance be shown, plaintiff could rightfully act upon the theory that the title to the coal had passed to the defendants, and recover the full contract price; or it could sell and dispose of the coal at the best price reasonably obtainable, and recover from defendant the loss or damage, if any, so sustained. Claiming to have so performed, plaintiff elects to treat the sale as completed, and demands recovery of the contract price. But it can put the defendants in the wrong and obtain such redress only by alleging and proving facts constituting performance or due tender on its part. The order in question was given October 18, 1919. It is couched in unequivocal terms, and calls for "five cars Harrisburg, Ill., 2" lump coal, three twenty-five per ton." It is not a simple general order for "coal" or "Harrisburg" coal or "lump" coal, but for "two-inch Harrisburg, Ill., lump coal;" and proof of performance or tender of performance must show a delivery or offer to deliver the thing ordered: "two-inch Harrisburg, Ill., lump coal." We think it very clear that the record entirely fails in proof of that fact. Not a single witness undertakes to say from his own observation or knowledge what was the character, kind, or quality of this coal. Not a record or document or bill of lading describes it as Harrisburg, Illinois, two-inch lump coal. Counsel seem to argue that the plaintiff's evidence does tend to show that the shipment was "coal," and was sent from Harrisburg, and that this sufficiently fills the bill. It is worth while, in this connection, to note that, according to the carrier's record, put in evidence by the plaintiff, the coal was shipped, not from Harrisburg, but from Ledford, Illinois. The plaintiff's objection that the defendants did not offer any specific objection to the kind or quality of the coal misses the real point. To make a prima-facie case, as against defendants' denial, the burden is on plaintiff, as we have already pointed out, to make affirmative showing of its own performance, or

tender of performance; and until then, the question whether defendants had a valid reason for refusing to receive the coal is immaterial.  Such showing not being made, defendants were not put upon their defense, and the trial court did not err in directing a verdict.

II.   Other features of the case have been argued by counsel; but, our holding upon the one considered in the preceding paragraph being determinative of the result, we do not pass upon them.

For the reasons stated, the judgment of the district court is—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.